IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TAMMY RENEE LONG,                                Case No. 3:11-cv-06109-MA

               Plaintiff,                    OPINION AND ORDER

    v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

              Defendant.

JOHN E. HAAPALA, JR.
401 E. Tenth Avenue, Suite 240
Eugene, Oregon 97401

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

JEFFREY R. MCCLAIN
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge:

Plaintiff Tammy Long brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for supplemental security income (SSI) and disability insurance benefits (DIB) under Titles XVI and II of the Social Security Act (the Act). See 42 U.S.C. §§ 401-403, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). For the reasons set forth below, I REVERSE the final decision of the Commissioner and REMAND this case for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for SSI and DIB on October 18, 2007, alleging disability due to a left thumb injury, acid reflux, and migraines as of September 12, 2007. Her applications were denied initially and upon reconsideration. A hearing was held before Administrative Law Judge (ALJ) Gary L. Vanderhoof on November 9, 2009, at which plaintiff was represented by counsel and testified, as did Medical Expert (ME) Gayle Monnig, Ph.D., ME George Decherd, M.D., Vocational Expert (VE) Mark McGowan, and plaintiff's husband, James Long. On December 14, 2009, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. After the Appeals Council declined review of the ALJ's decision, plaintiff timely filed a complaint in this Court.

## FACTUAL BACKGROUND

Born on January 1, 1969, plaintiff was 38 years old on the alleged onset date of disability and 40 years old at the time of the hearing. Plaintiff has a high school diploma and attended one year of college. She has past relevant work as an assembly worker, shipper, caregiver, and restaurant worker.

In June 2006, plaintiff sustained a thumb injury on her left hand. Over the next two months, she engaged in a number of physical therapy sessions, which were ultimately unsuccessful in alleviating her painful symptoms. Consequently, in September 2007, plaintiff underwent surgery to correct this injury; despite enduring a substantial number of physical therapy sessions post-surgery, plaintiff alleges that she has never been able to regain use of her left hand.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. Yuckert, 482 U.S. at 141-42.

At Step One, the ALJ found that plaintiff has not engaged in substantial gainful activity.    See 20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b), 416.971 *et seq.*

At Step Two, the ALJ found that plaintiff has the following severe impairments: status post severe hyperextension of left thumb, depression, and anxiety.   See 20 C.F.R. §§ 404.1520(c), 416.920(c).

At Step Three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or medically equal a listed impairment.   See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The ALJ determined that plaintiff has the residual functional capacity (RFC) to perform light work, but with the following limitations:

> lift/carry up to 20 pounds occasionally and 10 pounds bilaterally but only 10 pounds occasionally with the left upper extremity; occasiona[l] use of the left hand for handling/fingering; stand/walk up to 6 hours in an 8 hour workday; sit up to 8 hours in an 8 hour workday; no climbing ladders, ropes, or scaffolds; and no work around unprotected heights or dangerous, moving machinery . . . work [that] primarily [involves contact] with things rather than people, although one on one or one on two contacts [are] sufficient . . . [and work that is limited to] simple, routine, repetitive, or non-difficult tasks. (Tr. 21.)

See 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

At Step Four, the ALJ found plaintiff was not capable of performing her past relevant work.  See 20 C.F.R. §§ 404.1565, 416.965.

At Step Five, the ALJ found that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  See 20 C.F.R. §§ 404.1512(g), 404.1560(c), 404.1560(g), 416.960(c), 416.966.  Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff asserts that the ALJ erred by: 1) not determining that her knee pain, neck pain, shoulder pain, obesity, and right-handed carpal tunnel syndrome were severe impairments at Step Two; 2) improperly evaluating the opinions of nurse practitioner Kathleen Finley and Heidi Bloom, M.D.; 3) failing to provide legally a sufficient reason to reject her subjective symptom testimony; 4) erroneously assessing the lay testimony of Mr. Long; 5) finding that plaintiff's mental impairments did not meet listing 12.06 at Step Three; 6) failing to incorporate all of her limitations into the RFC assessment; and 7) posing invalid hypothetical questions to the VE at Step Five.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings

are supported by substantial evidence in the record.   42 U.S.C.
§ 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).
"Substantial evidence means more than a mere scintilla but less
than a preponderance; it is such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." Id. The
court must weigh all the evidence, whether it supports or detracts
from the Commissioner's decision. Martinez v. Heckler, 807 F.2d
771, 772 (9th Cir. 1986).   The Commissioner's decision must be
upheld, even if the evidence is susceptible to more than
one rational interpretation. Andrews, 53 F.3d at 1039-40. If the
evidence supports the Commissioner's conclusion, the Commissioner
must be affirmed; "the court may not substitute its judgment for
that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152,
1156 (9th Cir. 2001).

## DISCUSSION

I.   **Step Two Findings**

Plaintiff alleges that the ALJ failed to include her knee,
neck, and shoulder pain, as well as her obesity and right-handed
carpal tunnel syndrome, as severe impairments at Step Two.  In the
alternative, plaintiff argues that the ALJ failed to fully develop
the record in regard to these impairments.

### A.   **Severe Impairments**

At Step Two, the ALJ determines whether the claimant has a
medically determinable severe impairment or combination of

6 - OPINION AND ORDER

impairments.    20 C.F.R. §§ 404.1520, 416.920.    An impairment is "not severe" if it does not significantly limit the plaintiff's ability to do basic work activities.    20 C.F.R. §§ 404.1521(a), 416.921(a); see also Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

Only "acceptable medical sources," can diagnose and establish that a medical impairment exists at Step Two.    Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005); 20 C.F.R. §§ 404.1513(a), 416.913(a); see also SSR 06-03p, available at 2006 WL 2329939, *1-2.    Step Two findings must be based upon acceptable medical evidence, such as "signs, symptoms, and laboratory findings"; accordingly, "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." SSR 96-4p, available at 1996 WL 374187, *1.

The Step Two threshold is low.    The Ninth Circuit describes Step Two as a "de minimus screening device to dispose of groundless claims."    Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Moreover, "[o]missions at [S]tep [T]wo are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at [S]tep [T]wo."    Harrison v. Astrue, 2011 WL 2619504, *7 (D.Or. July 1, 2011) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)).

### i.  **Knee, Neck, and Shoulder Pain**

Plaintiff asserts that the ALJ erred by not finding that her knee, neck, and shoulder pain were severe at Step Two.  The only mention in the record of these impairments are from Ms. Finley. (Tr. 266-85, 439-76.)  Because Ms. Finley is a nurse practitioner, and there is no evidence in the record that Ms. Finley is working under the supervision of a licensed physician, she is not an "acceptable medical source" within the meaning of the regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a); <u>see also</u> SSR 06-03p, <u>available at</u> 2006 WL 2329939, *2.   Thus, Ms. Finley cannot establish the existence of an impairment at Step Two.

Even if Ms. Finley were an acceptable medical source, there is no acceptable medical evidence in the record, such as clinical or laboratory findings, regarding plaintiff's knee, neck, and shoulder pain other than her self-reports. (Tr. 266-85, 439-76.)  As such, Ms. Finley's notes reflecting plaintiff's subjective statements regarding these impairments cannot serve as the basis for a medically determinable impairment.  Therefore, the ALJ properly concluded that plaintiff's alleged knee, neck, and shoulder pain were not severe at Step Two.

### ii.  **Obesity**

Plaintiff next contends that the ALJ improperly omitted her obesity as a severe impairment at Step Two.  Specifically, plaintiff asserts that "obesity combined with [her] knee impairment

to worsen the impairment." (Plaintiff's Opening Brief (#16) p. 8.)
Plaintiff's argument is rejected for two reasons.

First, the only evidence in the record regarding plaintiff's
obesity is from Ms. Finley, who "worked with plaintiff to address
her weight impairment."  Id.  Evidence of weight gain and
recommendations to lose weight are insufficient to establish an
impairment due to obesity at Step Two or Step Three.  See, e.g.,
Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005); see also SSR
02-01, available at 2000 WL 628049, *6.  And, as discussed above,
Ms. Finley's opinion *alone* cannot establish the existence of an
impairment.

Second, plaintiff does not detail what restrictions flow from
her obesity.  There was no evidence before the ALJ, and none in the
record, providing that plaintiff's obesity limits her ability to
work or exacerbated her other alleged impairments.  Because there
is no evidence in the record relating to plaintiff's obesity other
than Ms. Finley's recommendation to lose weight, plaintiff failed
to show that this impairment significantly limits her ability to do
basic work activities.  Therefore, the ALJ did not err in finding
that plaintiff's obesity was not severe at Step Two.

### iii.  Right-Handed Carpal Tunnel Syndrome

Plaintiff also argues that the ALJ should have construed her
carpal tunnel syndrome in her right hand as a severe impairment.
In October 2006, Daniel A. Saviers, M.D., performed a series of

electrodiagnostic studies on plaintiff.   (Tr. 287-88.)   Based on
these test results, Dr. Saviers diagnosed plaintiff with "chronic,
mild" carpal tunnel in her left wrist.   (Tr. 288.)

However, during the examination, plaintiff told Dr. Saviers
that, despite being diagnosed with carpal tunnel syndrome in her
teenage years, "she has had no carpal tunnel [symptoms] for
approximately 20 years."   (Tr. 287.)   Plaintiff stated further
that, because she was no longer "doing the activities that used to
bother it, . . . she is not concerned with [her carpal tunnel
syndrome] at all."   (Id.)   The only other evidence in the record
relating to plaintiff's carpal tunnel syndrome is a chart note from
Dr. Bloom from April 2007.   (Tr. 235.)   Dr. Bloom's report merely
notes Dr. Saviers' diagnosis of "mild carpal tunnel syndrome."
(Id.)

Thus, besides her subjective reports, there is no evidence in
the record which suggests that plaintiff suffers from carpal tunnel
in her right hand.   (Tr. 61.)   Because the existence of an
impairment cannot be established on the basis of symptom testimony
alone, plaintiff's subjective reports were inadequate to establish
right-handed carpal tunnel as a medically determinable impairment.

Moreover, because plaintiff stated that she had not been
experiencing any carpal tunnel symptoms "for 20 years," and because
she never complained of or discussed any functional limitations as
a result of her right wrist pain with her treating source, there is

no evidence that plaintiff's carpal tunnel significantly limits her ability to do basic work activities.  (Tr. 266-85, 287, 439-76.) Therefore, the ALJ properly determined that this impairment was not severe at Step Two.

**B.  <u>Failure to Fully Develop the Record</u>**

Alternatively, plaintiff asserts that the ALJ should have further developed the record in regard to these allegedly severe impairments instead of "flat[ly] rejecti[ng]" them.  (Plaintiff's Opening Brief (#16) p. 8.)  It is the claimant's burden to prove the existence of an impairment at Step Two.  <u>Marci v. Chater</u>, 93 F.3d 540, 543-45 (9th Cir. 1996); <u>see also</u> 42 U.S.C. § 423(d)(5).

Yet, in certain limited circumstances, the ALJ has an independent duty to develop the record.  <u>Higbee v. Sullivan</u>, 975 F.2d 558, 561 (9th Cir. 1992).  However, the ALJ's "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir. 2001); <u>see also</u> <u>Webb</u>, 433 F.3d at 687.  Further, the ALJ is required to seek additional evidence only if the evidence already present consistently favors the claimant.  <u>Lewis v. Apfel</u>, 236 F.3d 503, 514-15 (9th Cir. 2001) (discussing 20 C.F.R. § 404.1527(c)(3)).

Here, neither the ALJ nor any medical source found the record to be ambiguous or insufficient for proper evaluation.  Rather,

plaintiff merely failed to introduce any acceptable medical evidence of these alleged impairments. Plaintiff's failure to carry her burden of proof, however, does not equate to an inadequacy or ambiguity in the record. Because the existing evidence is neither ambiguous or insufficient, and does not consistently favor plaintiff, the ALJ's duty to more fully develop the record was not triggered. Thus, I find no error in the ALJ's Step Two findings.

## II.  **Medical Opinion Evidence**

Plaintiff argues that the ALJ erred by providing legally insufficient reasons for rejecting the opinions of Ms. Finley, plaintiff's treating nurse practitioner, and Dr. Bloom, plaintiff's surgeon.

### A.  **Ms. Finley**

"Other" medical sources, such as nurse practitioners, can be used to determine the severity and functional limitations stemming from an impairment where, as here, the relationship is of sufficient duration. SSR 06-03p, available at 2006 WL 2329939, *4-5. Plaintiff argues that Ms. Finley constitutes an "acceptable medical source" because she "was working closely with, and under the supervision of" a doctor, citing Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011). (Plaintiff's Opening Brief (#16) p. 11-12 n. 2); see also Gomez v. Chater, 74 F.3d 967, 971 (9th Cir.), cert. denied, 519 U.S. 881 (1996). However, there

is no evidence in the record that Ms. Finley was in fact working in conjunction with a doctor.    Thus, on the record before me, I conclude that Ms. Finley is an "other" source, and therefore, the ALJ need only offer a germane reason to reject her opinion.    Turner v. Astrue, 613 F.3d 1217, 1223-24 (9th Cir. 2010).

On November 5, 2007, Ms. Finley wrote a letter pursuant to plaintiff's applications for DIB and SSI.  (Tr. 264-65.)   In that letter, Ms. Finley opined that plaintiff "cannot use her left hand or wrist to lift or carry or handle objects [but can] use her right hand without restriction." (Tr. 265.)  As such, Ms. Finley stated that plaintiff could lift "5-10 pounds [with her right hand] and carry it for a short distance, up to 10 feet." (Id.)  In addition, Ms. Finley remarked that plaintiff could sit for at least six hours in an eight hour period, stand for 20-30 minutes, and walk for 20-30 minutes.  (Id.)  Ms. Finley also assessed minimal limitations associated with plaintiff's mental impairments.    (Id.) Accordingly, Ms. Finley concluded that "there is some type of position that this lady could do." (Id.)

The ALJ did not expressly indicate which portions of Ms. Finley's reports he rejected or accepted.  Regardless, the ALJ did address each of Ms. Finley's functional limitations in his narrative discussion of the evidence.  (Tr. 20-23.)  Regarding Ms. Finley's statement that plaintiff was limited to lifting five to ten pounds with her right hand, the ALJ noted that "there [are] no

objective clinical findings to substantiate such a limitation."
(Tr. 22.)

The ALJ is correct; plaintiff failed to introduce any evidence
of impairment in her right hand or wrist.    Further, Ms. Finley's
lifting limitation is belied by her own remark that plaintiff was
"able to use her right hand without restriction."   (Tr. 22, 265.)
Thus, the ALJ provided a germane reason for rejecting the
limitations that Ms. Finley assessed regarding plaintiff's right
hand and wrist.

In addition, the ALJ found that Ms. Finley's statements
relating to plaintiff's ability to sit, stand, and walk were not
supported by the record.   (Tr. 22.)   The ALJ noted that neither
plaintiff nor her husband reported any difficulty in these areas in
their reports.   (Tr. 22, 156, 169, 197.)   Moreover, the ALJ found
that plaintiff's alleged impairments of knee, shoulder, and neck
pain were not medically determinable because "no clinical data has
[been submitted reflecting that plaintiff] would be limited in
walking, standing, or sitting."   (Tr. 22.)   The ALJ did, however,
partially accept Ms. Finley's report to the extent that it was
consistent with the ME's testimony, as he limited plaintiff to
standing and walking no more than six hours in an eight hour day
and instructed her to avoid unprotected heights, dangerous
machinery, and climbing ladders, ropes, and scaffolds.   (Tr. 21-
22.)

14 - OPINION AND ORDER

Finally, the ALJ did not reject Ms. Finley's assessment of plaintiff's mental limitations.  (Tr. 22-23.)  Rather, consistent with Ms. Finley's assessment, the ALJ's RFC restricted plaintiff to work that involves primarily things instead of people, and simple, repetitive, routine, non-difficult tasks, to account for plaintiff's moderate limitations in social functioning and in concentration, persistence, and pace.  (Tr. 23.)

Therefore, to the extent that the ALJ rejected Ms. Finley's opinion, he provided germane reasons for doing so, and I find no error.

**B.    Dr. Bloom**

To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons.  Id.  However, when evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory.  Id.

Dr. Bloom treated plaintiff for her left hand injury pre- and post-surgery.  (Tr. 234-38, 241-46, 402-03.)  Five months after plaintiff's surgery, Dr. Bloom opined that plaintiff will have "very limited use of [her left] thumb, [and] therefore have very limited job opportunities in the future."  (Tr. 403.)  Accordingly,

Dr. Bloom stated that "I believe that [plaintiff] is a good candidate for disability benefits." (Id.)

In his decision, the ALJ did not discuss Dr. Bloom's opinion. The Commissioner concedes that it was legal error for the ALJ to fail to provide any reasons to reject Dr. Bloom's statements. (Defendant's Response Brief (#20) p. 15.)   The Commissioner, however, argues that this error was harmless because Dr. Bloom's reports never provided any specific functional limitations regarding plaintiff's physical capabilities.   (Id. at 16.) Accordingly, the Commissioner asserts that the ALJ was free to disregard Dr. Bloom's opinion regarding plaintiff's use of her left hand and job prospects.  (Id.)

Contrary to the Commissioner's assertion, I find that the ALJ's failure to address Dr. Bloom's opinion was not harmless.  As plaintiff's treating doctor, Dr. Bloom's opinion was entitled to controlling weight if it was consistent with the other evidence and well-supported by medically acceptable clinical and laboratory diagnostic techniques.  See McLeod v. Astrue, 640 F.3d 881, 884-85 (9th Cir. 2011) (citing 20 C.F.R. § 404.1527).

There is ample evidence in the record regarding plaintiff's inability to use her left hand and wrist that is consistent with Dr. Bloom's opinion.  (Tr. 55-56, 264-65, 423, 435-36.)  Further, Dr. Bloom's assessment is well-supported by acceptable medical evidence; Dr. Bloom noted the failure of "all efforts at

conservative treatment," including extensive physical therapy, at remedying plaintiff's left hand pain.  (Tr. 235, 238.)  Dr. Bloom attempted to address plaintiff's symptoms with injections to the joint.  (Tr. 237.)

Dr. Bloom also ordered electrodiagnostic studies and an MRI, which revealed mild carpal tunnel in the left wrist and "subluxation at the thumb carpometacarpal joint[,] abnormal positioning of the proximal phalanx[, and] disruption of the volar metacarpophalangeal joint plate" in the left hand.  (Tr. 235.)  As a result, Dr. Bloom performed surgery, after which plaintiff underwent additional physical therapy sessions.  (Tr. 242-43, 372-400.)  Despite these best efforts, Dr. Bloom reported that "[c]learly this operation has not improved [plaintiff's] painful symptoms."  (Tr. 403.)  Accordingly, Dr. Bloom concluded that plaintiff would be unable to use her left hand.

As such, while the ALJ need not accept Dr. Bloom's statements regarding plaintiff's job prospects, he was required to consider and address Dr. Bloom's opinion regarding plaintiff's ability to use her left hand and wrist.  The ALJ's failure to do so was error.

III.  **Plaintiff's Credibility**

Plaintiff contends that the ALJ improperly assessed the credibility of her testimony regarding the severity of her symptoms and the degree to which they incapacitate her.

In deciding whether to accept subjective symptom testimony, such as pain or depression, an ALJ must perform two stages of analysis.  20 C.F.R. §§ 404.1529, 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  Smolen, 80 F.3d at 1282. Here, there is no dispute that plaintiff presented objective medical evidence in support of her claims of left arm pain, anxiety, and depression.  (Tr. 23.)

At the second stage of the credibility analysis, assuming there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Smolen, 80 F.3d at 1284; see also Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

If an ALJ finds that the claimant's testimony regarding her subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

Here, the ALJ discussed two reasons for discrediting plaintiff's testimony regarding her physical impairments: her activities of daily living and the lack of objective medical evidence. (Tr. 24.) In addition, the ALJ found that plaintiff's testimony regarding her mental impairments was not credible due her failure to seek medical treatment. (Id.)

The ALJ determined that plaintiff's "activities of daily living are inconsistent with an individual whose symptoms are unremitting and wholly unresponsive to treatment." (Tr. 23.) Specifically, the ALJ found that plaintiff's ability to clean her house, help her children with homework, help her husband prepare dinner, feed and water her pets, take care of her personal needs, drive, walk, and grocery shop with her husband belied her subjective symptom testimony regarding her physical limitations. (Tr. 23-24.)

At the hearing, plaintiff testified that she has constant pain in her left hand and "no pinch [or] grip strength in that hand . . . [and] I don't have full motion of my wrist." (Tr. 55.) As a result, plaintiff explained that she wears a brace on her left hand at all times, which was prescribed by her doctor, "[t]o keep my thumb from hurting as much from gravitational pull." (Tr. 56.) As such, plaintiff explained that she tries to do "light housework," such as loading the dishwasher or placing laundry in the washer or dryer, "[a]s long as I can do it with my one hand." (Tr. 48.)

Plaintiff's hearing testimony is commensurate with the activities that she described on her disability forms. (Tr. 56, 164-70.) For example, on her Adult Function Report, plaintiff stated that she does light cleaning, helps her kids with homework, and helps her husband with dinner by heating food items in the microwave. (Tr. 164-66.) Plaintiff explained that chores can be performed "only with [my] right hand," such that each task takes "2 to 3 times longer." (Tr. 166.) In addition, plaintiff remarked that she could drive an automatic car, "but this is still more difficult." (Tr. 167.)

She also stated that she could no longer dress herself because she "can't button[,] fasten[,] or tie anything without help." (Tr. 165.) Plaintiff further explained that she is unable to cook a meal from scratch because she "can't cut or chop, move pans, hold a pan and stir at the same time [or] open cans or jars." (Tr. 166.) Finally, plaintiff remarked that she always takes her husband shopping because she can only manage "small items, a few things that can be carried with one hand." (Tr. 167.)

Thus, the ALJ did not fully consider the record in assessing plaintiff's activities of daily living. While inconsistencies between a claimant's daily activities and the alleged impairments can serve as a basis for discrediting subjective testimony, the ALJ's adverse credibility determination on this point is not supported by substantial evidence. See Reddick v. Chater, 157 F.3d

715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record").

When viewed in its entirety, the record reveals that plaintiff's activities of daily living were very limited by her inability to use her left hand and wrist. Moreover, many of the daily activities that the ALJ cited as vitiating plaintiff's credibility, such as cooking by placing items in the microwave or moving laundry into the washer or dryer with her right hand, are not inherently inconsistent with plaintiff's allegations of pain and do not necessarily indicate the ability to engage in sustained work activity. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Reddick, 157 F.3d at 723-24. Thus, it was error for the ALJ to fail to consider plaintiff's entire statements regarding the extent of her daily activities when assessing her credibility.

The ALJ also found that plaintiff's testimony regarding her inability to use her left hand was not credible because it was not supported by "objective testing." (Tr. 24.) The ALJ then cited to a post-surgery status report from Dr. Bloom; that report revealed that plaintiff had a pinch strength of "4 pounds with pain" on her left hand. (Tr. 403.) In that same report, and based on those test results, Dr. Bloom opined that plaintiff's "operation has not

improved her painful symptoms, therefore I expect that she will have very limited use of this thumb." (Id.)

Additional medical evidence supports plaintiff's subjective reports that her left hand strength was severely limited. Two consulting medical sources, Linda Jensen, M.D., and Martin Lahr, M.D., M.P.H., opined that "[plaintiff's] self reports regarding the severity of her impairments are mostly consistent [with the] totality of [the medical evidence], in as much as it relates to her left hand." (Tr. 423, 435-36.) In addition, Ms. Finley reported that "[plaintiff] cannot use her left hand or wrist to lift or carry or handle objects." (Tr. 265.)

The only contrary evidence in the record is from Dr. Decherd, the ME who testified about plaintiff's physical impairments at the hearing. Dr. Decherd stated that plaintiff was capable of lifting ten pounds with her left hand, as well as occasional handling and fingering. (Tr. 43.) Dr. Decherd's testimony is not substantial evidence in this instance because the other medical evidence supports plaintiff's subjective symptom reports. Thus, the ALJ's adverse credibility determination on this point, too, is not supported by substantial evidence.

The ALJ next determined that plaintiff's subjective reports regarding the extent of her depression and anxiety were not credible because plaintiff did "not maintain regular clinical

treatment." (Tr. 24.)  Lack of medical treatment is a valid reason to discredit a claimant's testimony.  Burch, 400 F.3d at 681.

In this instance, substantial evidence supports the ALJ's finding.  Beyond visits to her nurse practitioner four times a year to refill her medications, plaintiff has not sought any mental health treatment for her alleged psychological impairments.  (Tr. 50-51.)  Further, most of Ms. Finley's progress notes relate to problems with plaintiff's pain and weight-gain.  (Tr. 266-85, 439-76.)  As such, there is no evidence, beyond her subjective testimony, that plaintiff was suffering from debilitating anxiety.

Periodically, Ms. Finley did have plaintiff perform "check-the-box" mental health surveys; Ms. Finley's treatment notes, however, rarely reflect discussion of these surveys or of plaintiff's mental health status.  (Tr. 275, 279, 442, 448, 453, 456, 458, 464, 468, 474.)  Moreover, the letter that Ms. Finley submitted pursuant to plaintiff's applications for DIB and SSI suggests that plaintiff's mental impairments are situational and only minimally impair her ability to work.  (Tr. 264-65.)

In addition, plaintiff stated, as the ALJ noted, that she gets along with authority figures, and follows written and spoken instructions, "fine."  (Tr. 23, 169.)  The ALJ also noted that plaintiff reported that she goes to church twice a week and attends her son's sporting events once per week.  (Tr. 23, 168.)  Accordingly, plaintiff's own testimony is inconsistent with her

assertion that her anxiety was so severe that she was unable to leave the house or work.

Thus, the foregoing discussion reveals that the ALJ did, in fact, identify specific evidence in the record that undermines plaintiff's subjective reports regarding her anxiety and depression. Therefore, the ALJ's credibility determination concerning plaintiff's alleged mental impairments is supported by substantial evidence.

Although the ALJ did not err with respect to plaintiff's alleged mental impairments, the other reasons provided were not supported by the record. As discussed above, the ALJ did not provide adequate reasons to discount plaintiff's testimony concerning her left hand and wrist, nor did the ALJ discuss the medical evidence from Dr. Bloom concerning the same. Therefore, I cannot conclude that the error was harmless. Cf. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

## IV.  Lay Testimony

Plaintiff also asserts that the ALJ failed to provide a legally sufficient reason to reject Mr. Long's testimony. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 2012 WL 1071637, *7 (9th Cir. Apr. 2, 2012). The ALJ must provide reasons germane to each witness in order to discount competent lay

testimony. <u>Id.</u>; <u>Lewis</u>, 236 F.3d at 511.  However, in rejecting lay testimony, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." <u>Molina</u>, 2012 WL 1071637 at *7; <u>accord</u> <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009) (rejecting lay testimony on same basis as claimant's discredited subjective reports); <u>Lewis</u>, 236 F.3d at 512.

Mr. Long offered testimony relating to plaintiff's symptoms at the hearing and completed a Third-Party Adult Function Report. (Tr. 63-66, 192-99.)  In both instances, his testimony was nearly identical to plaintiff's. (<u>Id.</u>)  Yet the ALJ only devoted one sentence to Mr. Long's statements: "[plaintiff's] and her husband's allegations of disability are granted limited credibility to the extent they are consistent with the [RFC]." (Tr. 24.)  As such, it appears that the ALJ discredited Mr. Long's testimony for the same reasons that he discredited plaintiff's testimony.

As discussed above, the ALJ failed to provide clear and convincing reasons to reject plaintiff's testimony.  Therefore, it follows that the ALJ erred in discrediting Mr. Long's testimony.

## V. <u>Listing 12.06</u>

Plaintiff contends that the ALJ erred in determining that her anxiety disorder did not meet listing 12.06 at Step Three.  In

order to meet "[t]he required level of severity" for listing 12.06, the claimant must introduce evidence which establishes that the criteria listed in sections A and B, or in sections A and C, are satisfied.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06; see also Burch, 400 F.3d at 683.

Neither party discussed the A criteria in their briefs.  As such, the Court presumes that it is undisputed that plaintiff meets this criteria.  It is further undisputed that the C criteria are not applicable in this case.  Accordingly, the only issue is whether plaintiff demonstrated that the B criteria were met.

The B criteria of listing 12.06 requires the claimant to demonstrate a "marked restriction" in two of the following categories: "activities of daily living," "maintaining social functioning," "maintaining concentration, persistence, or pace," or "[r]epeated episodes of . . . decompensation in work or work-like settings."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06.

Here, the ALJ determined that plaintiff had mild restrictions in the activities of daily living, moderate restrictions in social functioning, and moderate restrictions in regard to concentration, persistence, or pace, with no episodes of decompensation.  (Tr. 20.)  Plaintiff does not dispute the ALJ's finding regarding episodes of decompensation, but rather contends that her "restrictions in her activities of daily living [and in social functioning] were 'marked.'"  (Plaintiff's Opening Brief (#16) p.

17.)  Plaintiff relies on her own subjective symptom testimony and on Ms. Finley's chart notes as support.  (Id.)

The only evidence relating to plaintiff's mental impairments other than her subjective reports, which the ALJ properly discredited, is from Drs. Monnig, Rethinger, and Ms. Finley.  While acting as an ME at the 2009 hearing, Dr. Monnig testified that plaintiff did not meet or equal listing 12.06.  (Tr. 36-37.)

On March 31, 2008, Paul Rethinger, Ph.D., a consulting source, completed a Psychiatric Review Technique form.  (Tr. 404-16.)  Dr. Rethinger did not find evidence relating to anxiety in plaintiff's record and instead assessed her as having depression.  (Tr. 407.)  Regardless, Dr. Rethinger found that plaintiff had no restrictions in her activities of daily living, mild restrictions in maintaining social functioning, and no restrictions in maintaining concentration, persistence, or pace.  (Tr. 414.)

On November 5, 2007, Ms. Finley opined that plaintiff's anxiety and depression resulted from situational stressors rather than from an underlying mental health condition.  (Tr. 264.)  Accordingly, Ms. Finley assessed very few limitations as a result of these impairments, explaining that plaintiff's "only problem with work-related mental activities is her frustration, anger, and depression, [which result from her inability to work]."  (Tr. 264-65.)  While Ms. Finley did not complete a Psychiatric Review Technique form, she did state that plaintiff was "able to hear,

speak, and travel." (Tr. 265.) Ms. Finley further stated that plaintiff "can understand and remember things and sustain concentration, except when she is in pain [and] can persist, socially interact, and adapt some [but her] mental issues do cause some problems . . . as far as socially interacting and adapting." (Id.)

As such, beyond plaintiff's own statements, there is no evidence in the record that she suffered from "marked" restrictions in her activities of daily living or in maintaining social functioning. Rather, all of the evidence in the record supports the ALJ's Step Three finding. Therefore, the ALJ did not err in determining that plaintiff's mental impairments did not meet listing 12.06.

**VI. Plaintiff's RFC Determination and the ALJ's Step Five Finding**

Lastly, plaintiff argues that the ALJ failed to incorporate all of her impairments into the RFC assessment. As a result, plaintiff asserts that the hypothetical questions that the ALJ posed to the VE were invalid. I agree.

The RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must reach the RFC assessment based on all the relevant evidence in the record, including medical records and the effects of symptoms that are reasonably attributed to a medially determinable impairment. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

As discussed above, the ALJ did not provide legally sufficient reasons for discrediting plaintiff's and Mr. Long's testimony regarding plaintiff's left arm.    Moreover, the ALJ failed to provide a clear and convincing reason to reject the uncontroverted opinion of Dr. Bloom concerning plaintiff's use of her left arm. Because the RFC does not account for this potential additional limitation, the RFC assessment is erroneous.    Likewise, the hypothetical posed to the VE was also erroneous.

After finding the ALJ erred, this Court has the discretion to remand for further proceedings or for the immediate payment of benefits.    <u>Vasquez v. Astrue</u>, 572 F.3d 586, 593 (9th Cir. 2009); <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert. denied</u>, 531 U.S. 1038 (2000).    The issue turns on the utility of further proceedings.    A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." <u>Harman</u>, 211 F.3d at 1178.    The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. <u>Id.</u>

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003).

While the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's testimony, Mr. Long's testimony, and the opinion of Dr. Bloom, it is unclear whether a finding of disability would be required on the record before me. Although plaintiff's attorney asked the VE whether plaintiff's restrictions would be different if limitations were included concerning the left upper extremity, the VE did not respond that such limitations would preclude employment. (Tr. 74.) The evidence, therefore, does not "clearly indicate the proper outcomes of [S]teps [F]our and [F]ive of the disability determination evaluation." <u>Vasquez</u>, 572 F.3d at 597. Therefore, I cannot find plaintiff disabled and an award for immediate payment of benefits is improper. <u>Id.</u>; <u>Harman</u>, 211 F.3d at 1180.

Accordingly, this case is remanded for further proceedings in order to reassess plaintiff's credibility, Mr. Long's testimony, and Dr. Bloom's opinion relating to plaintiff's left hand and wrist; the ALJ should reconsider whether that evidence requires a new RFC, and the ALJ must obtain additional VE testimony in light of the new RFC evaluation.

**CONCLUSION**

For the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is REVERSED, and this case is REMANDED, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this *14* day of May, 2012.


Malcolm F. Marsh
United States District Judge

31 - OPINION AND ORDER